Succession of Breaux.

## No. 1274.

SUCCESSION OF EUGENE BREAUX—OPPOSITION TO TABLEAU AND ACCOUNT BY URANIE PELLETIER.

1. The dowry is given to the husband for him to *enjoy* the same so long as the marriage shall last. R. C. C. 2347.

   With respect to the effects of the dowry, the *husband* is subject to all the obligations of the usufructuary. R. C. C. 2365, 549, 594.

   If the dowry consist of immovables, or of *movables not valued by the marriage contract*, the husband or his heirs may be compelled to restore the same at the dissolution of the marriage. R. C. C, 2367.

2. At the dissolution of the marriage all effects which both husband and wife reciprocally possess, are *presumed* common effects, or gains, unless it be satisfactorily shown which of such effects they brought in marriage or which have been given them separately, or which they have respectively inherited.

3. In order to charge the community for separate account of the *husband*, the proof must show, with reasonable certainty, that his property, or money, has been used for the benefit of the community.

APPEAL from the Twenty-first District Court, Parish of St. Martin. *Gates*, J.

---

*C. H. Mouton* for Opponent and Appellee.

*Felix Voorhies* and *Mouton & Martin* for the Administrator, Appellant.

---

The opinion of the Court was delivered by

WATKINS, J. Uranie Pelletier, the opponent, and Eugene Breaux, deceased, were married on the 20th of June, 1854. There was a marriage contract between the spouses, but it contained no stipulation that there should exist no community between them.

No children were born of their marriage. Uranie Pelletier survived the husband. At the date of Eugene Breaux's marriage with opponent, he had nine children, born of a former marriage with Josephine Beguenand, and to whom he was indebted in the sum of $1307.13, and which sum he paid them respectively, as they arrived at their majority, and during the existence of the community.

The opponent, Uranie Pelletier, accepted the community with benfit of inventory.

In the tableau of distribution and classification of the estate of Eug. Breaux, the administrator shows the active mass to be $5508.95 ; but also shows that same is in part composed of property belonging to the community, existing between deceased and opponent, and alleges the necessity of same being kept separate, with their charges respectively, in order that a fair distribution be made.

He then makes a statement of what the community is composed, viz:

Cash on hand.............................................$ 890 00

Succession of Breaux.

| | | |
|---|---|---|
| Ledoux's note.............................................. | 200 | 25 |
| Numa Patin's note........................................ | 140 | 00 |
| Land, No. 6 of tableau.................................... | 910 | 00 |
| Cotton in seed (sold)...................................... | 18 | 24 |
| Corn in seed (sold)....................................... | 70 | 00 |
| Total community assets...................$2,228 | | 49 |

Of this, one-half belongs to opponent, add the other to the heirs of the deceased—he having died intestate—"after deduction is made of its debts and liabilities" and which are enumerated as follows, viz :

1st. One-half of the law-charges and costs incurred in the settlement of the estate of deceased.

2d. One-half of the claims of the spouses against the community. These are designated as follows, after deducting costs ......$ 148 80

I.

Amount as per marriage contract......................... 125 00

II.

"The personal property of Eugene Breaux, as per marriage contract above mentioned, consisted in part of horned cattle, horses, etc., which have been disposed of for the use and benefit of the community.......................... 850 00

III.

"Negro James mentioned in said marriage contract, was sold during their marriage, and shortly before the war * * This amount was employed for the benefit of the community to meet its liabilities and charges, during the four years the war lasted........................ .............. 1200 00

IV.

"Money loaned by deceased to Widow Rosemond Pelletier and subsequently collected through sale of land to St. Pé, and which forms part of cash inventoried, and the mortgage note of Numa Patie represents the balance. That amount enured to the benefit of the community, and the estate is its creditor for........................................ 1000 00

V.

"The estate is also a creditor of the community for a sum by deceased collected from the estate of his first wife, and employed for the benefit of the community.............. 2250 00

"Claims of spouses against the community aggregating...... 5425 00

"Of this, the individual claims of Eugene Breaux against the community aggregate.................................. 5300 00

"The debts and charges *absorbing* the whole of the community    *    *
and after deducting costs and the privilege claims,    *    *    the balance
of that community, *i. e.*, $954, goes to the estate of Eugene Breaux, to
be added to the active mass of that estate, etc."

Uranie Pelletier opposed this tableau and classification on the follow-
ing grounds, substantially, viz:

That, in addition to the sum the deceased used of the community
funds, with which to make settlements with his children by a previous
marriage, $1307.13, the active mass of the community is incorrectly
stated to be $2228.40, and that same should be increased by the pre-
ceding sum of $1307.13; and that there was sufficient money on hand
at the death of deceased to have paid "all legitimate debts due by the
community."

She specially opposes the items carried on said tableau as claims of
deceased, against the community, as illegal, viz:

The items of $850, $100, $1200, $2250, $5300.

Respondent and opponent specially denies that any of these items
are debts or charges due by the community and prays for the rejection
and disallowance of all of same and that the administrator be charged
with the specified sum of $1307.13, and they be decreed the owners of
one undivided one-half of the land described in item No. 6 on the tab-
leau, and appraised as No 2 in the inventory of the deceased.

II.

The testimony shows that the plantation of Eugene Breaux was in
a better condition in 1854, when he married Uranie Pelletier, than
when he died in 1882.  At that time he had a number of cattle, horses
and mares, also three or four yoke of oxen and about fifty sheep.
Some of the witnesses state that the plantation and improvements had
diminished in value, at least one-fourth, between the date of the mar-
riage in 1854, and his death in 1882—a period of about thirty-two
years.

Michel Breaux, a son of the deceased, who states his age to be twen-
ty-seven years, says that the sheep were sold to Valery Ledoux; that he
delivered six cows to Arthur Patin, the agent of Uranie Pelletier, the
opponent, to replace the cattle that she brought in marriage.

He further states that his father paid every one of the heirs—chil-
dren of a former marriage—the amount coming to them, but he fails
to state the source from which he derived the means—presumably from
the community, of which he was the head and master.

Uranie Pelletier was one of the heirs of Henrietta Breaux, widow of
Jean Pelletier.  None of the lands inventoried in the succession of

Eugene Breaux have been sold. The opponent in an authentic act, formally accepted the community with the benefit of inventory.

Aside from certain documentary evidence, this is in substance the whole of the administrator's evidence in support of his tableau, and classification of the debts and charges against the community above enumerated.

From the homologated settlement made, in 1858, of the proceeds of the sale of the estate of Henrietta Breaux, widow of Jean Pelletier, it appears that opponent, as an heir, applied her interest, as an heir, to the payment of "several purchases made by her husband * * as appears by the *proces verbal of sale*, $1209.81.

Her share being, as above stated, $1158.35¼, leaving a balance in favor of the succession of $51.45¾.

### III.

The judge *a quo* held that all the items enumerated in the tableau as community, properly belonged to it, but omitted any discussion in regard to the item No. 6, same being land valued at $910, inasmuch as the same remained unsold. He treated the proceeds of the sale of movables made on the 1st of February, 1883, in the absence of countervailing proof, as assets of the community, $1223.95.

He also held the sum paid by the deceased in settlement of the amounts coming to the children of his first marriage, was presumably paid with community funds, and he should be charged on his account with $1307.13.

Making total amount of the active mass of the community, not including the land remaining unsold.....................$3849.57

Less amount of community debts........................  273.80

Leaving net amount of community.......................  3575.77

One-half to the widow.................................  1787.88

The account admits that the land indicated upon it as item No. 6, and valued at $910, is an asset of the community, and one-half interest therein belongs to opponent.

The rehearsal of the evidence we have given above clearly shows that the separate rights and claims of the deceased, Eugene Breaux, against the community, are not supported by proof, and same must be rejected and disallowed.

For the sum of $1787.88, the court *a qua* gave opponent judgment against the estate of her deceased husband, as her undivided half interest in the community; and the further sum of $125 by her brought into the community at the time of her marriage. This should have

been deducted before division was made. He further ordered that the account filed by the administrator be rejected, and that he be ordered and required to file a new account in conformity with the particulars of said decree, and fully recognizing opponent's ownership of one undivided half interest in land mentioned on tableau as No. 6, and No. 2 on the inventory, and appeared at $910.

## IV.

"At the time of the dissolution of the marriage all effects which both husband and wife reciprocally possess are *presumed* common effects, or gains, unless it be *satisfactorily proved* which of said effects they brought in marriage, or which have been given them separately, or which they have respectively inherited." R. C. C. 2405.

Under the proof, indubitably the effects indicated are "common effects, or gains." There is no evidence in the record to establish the claims of deceased against the community. The administrator failed to trace the separate property into the *possession of the community*, or to show that same was sold, or disposed of for its use and benefit. 30 Ann. 275, Denegre vs. Denegre. Succession of Melany Foreman, 38 Ann. —, unreported, and decisions therein referred to; 36 Ann. 605; 10 R. 181.

Judgment affirmed.