181 So. 802

Succession of PROVOST.

GONSOULIN et al. v. PROVOST.

No. 34184.

May 2, 1938.

Weeks & Weeks, of New Iberia, for appellants.

Walter J. Burke, of New Iberia, for appellee.

LAND, Justice.

Plaintiffs, Mrs. Hortense Provost Gonsoulin, Mrs. Antoinette Provost Druilhet, and Mrs. Rita Provost Minvielle, are the forced heirs of Joseph A. Provost, who died in the Parish of Iberia in this State on October 10, 1932, leaving a large and valuable estate, including a sugar plantation, and sugar refinery, lands, stocks

bonds, monies, claims, accounts and other assets.

Petitioners and their brother, Albert Sidney Provost, who died before his father, unmarried and intestate, were his only children, and were all born of the second marriage of Joseph A. Provost to Mrs. Eleonor Lyon Provost, who died about September 1896; and their father, in June 1900, married Mrs. Juliet Hill Provost, who is executrix of his will and defendant herein.

On May 1, 1926, their father made and executed his last will, in olographic form, which was probated in the Sixteenth Judicial District Court for the Parish of Iberia in October, 1932, at the instance of Mrs. Juliet Hill Provost, who has qualified as Executrix of the will and succession.

The plaintiffs, who are heirs and legatees of the deceased, couple with an action for the interpretation of the will, a demand against the testamentary executrix, who is a legatee, for the refund of various funds belonging to the separate estate of their father and owned by him at the time of his marriage to the executrix.

The will is set forth in the petition as follows:

"Jeanerette, Parish of Iberia, La.,
"May 1st, 1926.

"This is my last will and testament revoking all others. To avoid confusion in settling my affairs after my death I declare that immediately before my marriage to Mrs. Juliet Rebecca Hill Provost, Messrs. Arestide L. Monnot and Narcisse Druilhet, inventoried and appraised under date of May 21st, 1900 my separate estate. I had previously settled the affairs connected with the Community existing between my second wife, Mrs. Eleonor Lyon Provost and myself the interest of my children issue of said marriage having been acquired by me.

"I have paid three of the children, Mrs. Fernand P. Gonsoulin, Mrs. F. J. Druilhet and Mrs. H. R. Minvielle there has remained on my hands the amount due Albert Sidney Provost with whom a settlement could not be made on account of his infirmity. There is due him the sum of eleven hundred and thirty-eight 48/100 dollars. I have given to each of my three other children named above, at various times monies, as follows: on or about Oct. 18th, 1899 $500.00, November 2nd, 1905 $500.00, April 20th, 1909 $750.00, February 1918 $800.00, April 7th 1920 $1000.00 May 29th, 1922 $800.00. I have given to them also properties in Jeanerette and Belle Grove Plantation, all as will found of record. In order to equalize all parties, I desire these donations to be collated.

"I direct my executrix take the necessary steps to have Curators appointed to my son, Albert Sidney Provost One of these I request to be Mrs. Rita M. Provost Minvielle, having the care of his person; The other must be a Bank and Trust Co., selected with the approval of the Court, and choice should be made of a sound Trust Company in New Orleans. This Trust Company having custody of the assets of the said son, will make the proper allowance as approved by the Court for the maintenance and comfort of my son.

"Since my marriage with my present wife, I have accumulated additional property which belong to the community. I have used community funds to add substantial improvements to my separate property, and for which amounts the community would be indebted to my wife, and it is my desire that no issue arise on that score and now I make my bequests so as to do justice between all parties as well as to carry out my intentions and desires.

*"Included in this one-third,* at its just valuation, I specially *give and bequeath to her* my property described as follows: *That certain lot in Jeanerette, La., on which is situated my residence and its appurtenances described as follows:* Bounded North by Bayou Teche, South by Main Street, East by lots belonging to the town of Jeanerette, to Hebert, Sallinger and others or their respective assigns, and West by the private road from Main Street to the Bayou side of the private street leading from my office along the property of Mrs. Fernand P. Gonsoulin to the Bridge Street then from the Bayou side of said street to Bayou Teche, the said private street shall be considered *as belonging to the property bequeathed to my wife,* the intent being to leave the private open from Main Street to the other street mentioned for the benefit of my home property and those heretofore donated to my children. And the other street from my office to Bridge Street being also reserved for all said properties. *With this property I give to my said wife all of the household effects and things contained in my home* whether my separate property or my share of the community interest therein, all cattle, stock,

fouls, movable *of any nature on or belonging to said homestead, out of the share alloted to her,* I request my wife to deduct One thousand 00/100 dollars to masses for the repose of my soul and ten thousand 00/100 dollars to such charities as she may deem proper or I may have advised her.

*"The remainder of my estate* I give share and share alike to my four children.

"I appoint and constitute Mrs. Juliet Rebecca Hill Provost my testamentary executrix with seizin and without bond.

"Now Committing my soul to the Mercy of my Creator I subscribe to this my will entirely written and dated in my own hand writing.   (Italics ours)

"(Signed)   Jos. A. Provost."

Plaintiffs pray "that the said will be interpreted, construed and decreed by this court, to contain but two bequests and legacies, namely, first, the legacy to his said widow in the fifth (sixth) paragraph of said will, of the household effects and things contained in his home, whether his separate property, or his share of the community interest therein, all cattle, stock, fowl, movables of any nature, in or belonging to said homestead. And second, the bequest under the sixth paragraph of said will of the entire remainder of the testator's estate, share and share alike, to his children, being these petitioners and his said son, now deceased; and petitioners pray that they be accordingly decreed and recognized as the legatees and owners of the entire estate of Joseph A. Provost of whatever kind, real or personal, save for said one bequest to his said widow of household effects and movables. And, in

the alternative, that their said prayer as just above be not allowed and that said will be held to contain a valid bequest though they deny its validity, then, they pray that the said first provision of said fifth (sixth) paragraph beginning with the words, 'included in this' etc., be construed as a bequest of the one-third of the lot of the decedent in Jeanerette on which his residence was situated, and of nothing save said lot.

"And further, they pray that the wrongful pretense and misconstruction of said will by the said Mrs. Juliet Hill Provost as giving to her one-third of all of the said estate of her husband be decreed incorrect, unfounded and without basis."

1. On this branch of the case, the trial Judge rendered the following judgment:

"It is therefore ordered, adjudged and decreed that there be judgment declaring that the last will and testament of Joseph Alcide Provost gave to and vested in his wife, Juliet R. Hill Provost, the one-third undivided right, title and interest in his entire estate, and included in the one-third, at its just valuation, is that certain lot in Jeanerette, La., on which is situated the deceased's residence and its appurtenances."

■ In our opinion, the construction placed upon paragraph six of the will by plaintiffs is not well founded.

In construing the will as bequeathing to defendant in full ownership nothing but all the household effects, and other movables "of any nature on or belonging to said homestead", "out of the share alloted to her", plaintiffs completely ignore the fact that all of these movables and the homestead are "Included in this one-third at its just valuation", which is "the share allotted to her" by the will of the testator in his estate, which consists of his entire separate estate and his undivided one-half interest in the community property.

The testator was giving to his widow no more than the law permits him to dispose of, one-third of his estate.

■ It is well settled that: "To ascertain the intention, the different clauses of a will must be construed with reference to each other, and the whole language considered. If there be obscurity or doubt in any particular clause, other clauses are to be brought in juxtaposition with it, and such an interpretation deduced, if possible, from all, as will make all harmonize." See Louisiana Digest, Wills ☜470; Mishon v. Bein, 7 Rob. 146; Lebeau v. Trudeau, 10 La.Ann. 164.

"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." Rev. Civ.Code, art. 1713.

"Where a will is susceptible of more than one construction, the one which will render it valid will be preferred." Swart v. Lane, 160 La. 217, 106 So. 833; See Louisiana Digest, Wills ☜446; Succession of May, 109 La. 994, 34 So. 52.

Our conclusion is that the interpretation of the will, as made by the trial Judge, is correct, and is therefore approved.

■ 2. The declarations in the will, "Since my marriage with my present wife,

I have accumulated additional property which belongs to the community. I have used community funds to add substantial improvements to my separate property, and for which amounts the community would be indebted to my wife" cannot bind plaintiffs as forced heirs, nor the inventory of 1900, nor any recitals contained in the private books and writings of the testator, and the doctrine of estoppel cannot be applied.

"Forced heirs are not only not estopped from contesting the simulated acts of their parents, to which they were not parties, but they are specially granted by statute the right to have such acts set aside even by parol evidence, and the right of action is not restricted to their legitime. C.C. art. 2239; Act 5 of 1884." Ramsey et al. v. Beck et al., 151 La. 190, 91 So. 674, 676; Reine v. Reine et al., 170 La. 839, 129 So. 364; Westmore v. Harz, 111 La. 305, 35 So. 578; Tessier v. Roussel, 41 La. Ann. 474, 6 So. 542, 824.

3. The present suit has two purposes. First, plaintiffs seek an interpretation of the will of the late Joseph A. Provost. Secondly, they demand an accounting by the community existing between him and his surviving widow for his separate funds, shown by the inventory made by him before his marriage of date May 21, 1900, and alleged to have been commingled with community funds.

In the amended petition (Transcript, volume 1, page 31) the specific declarations as follows are made:

"11—2 They show that in this Defendant's answer to their rule upon her to obtain a proper inventory in the succession, and for full disclosure of its assets, she judicially alleged and admitted that whatever collections were made on any indebtedness due said Joseph A. Provost before her marriage to him and paid to him after said marriage were by him mingled with the funds of said community.

"11—3. They show that now under the requirement of said ruling and order, and on the faith of Defendant's said allegation, petitioners allege that all funds whatever belonging to their said father, prior to his said last marriage, were by him mingled with the funds of the community of his last marriage, including all his cash monies and monies on deposit, or in the hands of other parties for his account, all sums due to him, the proceeds of the collection of all promissory notes and of all debts owing to him, and also monies received by him as the proceeds of sales made during said last marriage of Belgrove Plantation and of other lands and improvements of sugar, timber and of other assets of his separate estate, movable and immovable, and also the full sum of all monies received by him in liquidation of shares of the capital stock (but not as dividends) in the Planters Lumber Company, as owned by him prior to said marriage, as well as amounts paid him upon stock so owned by him in the Jeanerette Building Association, and any and all funds belonging to his separate estate and received by him during said marriage. They show that all monies and funds of his separate estate as so received, were by him mingled with the funds of said community.

"11—4. They show that by reason of said commingling of his separate moneys with said community monies, said community is now indebted to said separate estate of Joseph A. Provost, in amounts equal to the full amount of said funds of said separate estate that were so commingled as above alleged, with said community funds.

"11—5. They show that by every amount of said monies and funds of his separate estate which said Joseph A. Provost mingled with the funds of said community, the said community funds and said community itself were necessarily increased and enhanced in an equal amount."

The petition then enumerates various amounts which Joseph A. Provost is alleged to have mingled with the funds of the community.

4. With reference to the issue as to the separate funds of which an accounting is claimed, defendant invokes the declaration in the will. (Paragraph 7, Transcript, vol. 1, page 59.) "She avers that the declarations of the will of Mr. Provost with reference to the expenditure of large amounts in permanent improvements to his separate property and for which community funds were used, are true, and that she will hereinafter in answer to other paragraphs furnish in detail the amount of actual expenditure of funds of the community inuring to the benefit of the separate property of Mr. Provost, and that she reserves her rights to such further proceedings with reference to said expenditure as may be necessary, either in partition or other proceedings."

5. Referring to the pre-nuptial inventory which is the basis of the claim for a refund of cash and the proceeds of notes belonging to Mr. Provost at the time of his marriage, the answer, paragraph 17, Transcript, volume 1, page 76, sets forth:

"Further answering, she avers taking as correct, for the purposes of this allegation, the statement of plaintiffs' petition as to the amount of cash held by Mr. Provost at the date of his marriage, the proceeds of the various notes and claims collected after his marriage and the profits of the crop of the year 1900 after deducting expenses (the said net proceeds in truth belonging to the community) there is an aggregate of Thirty-two Thousand seven Hundred and forty-eight 80/100 Dollars, and she further avers that since his marriage with defendant he has made donations to the three petitioners, their deceased brother, Albert Sidney Provost, and to his grand-children, a sum aggregating Sixty-four Thousand Eighty-one 98/100 Dollars, being an excess over any amount he may have had as of date before his marriage to defendant, of Thirty-one Thousand Three Hundred and thirty-three 18/100 Dollars.

"XVIII. She further avers that he not only gave to his children and grand-children more than twice the amount he could have brought in marriage, of which one-half of that amount was community money, with reference to which she reserves all rights; but he made great expenditures for the improvement and up-keep of his separate properties, all of which was paid for with funds belonging to the community."

Paragraphs 19 and 20 aver that on the improvements of the sugar mill on Right-Way Plantation belonging to him, he expended after marriage the sum of eighty-two thousand three hundred and ninety 17/100 dollars.

Paragraph 21 avers that he constructed a system of levees to protect Belle Grove and Right-Way Plantations, his separate properties, from the annual danger of being flooded by the rise of water in the Atchafalaya Basin and which system, after his marriage, aggregated seven thousand eighty-eight 51/100 dollars, and which improvements were paid for out of community funds.

Paragraph 22 avers that, for the purpose of maintaining a drainage system on his separate plantations, he expended four thousand six hundred and sixty-seven 30/100 dollars, and these improvements are of a permanent nature.

Paragraph 23 avers that he expended for the improvement of his separate property for the use of his planting and milling operations a system of Railroad with equipments on Belle Grove and Right-Way Plantations, and which improvements, made with funds belonging to the community, aggregate nineteen thousand two hundred and twenty-five 39/100 dollars.

Paragraph 24 avers that he constructed cabins, sheds, warehouses and sundry improvements on said Right-Way Plantation of a permanent nature, aggregating seventeen thousand four hundred and four 76/100 dollars and an aggregate of five thousand four hundred and forty-one 17/100 dollars on Belle Grove Plantation.

Paragraph 25 avers that he improved the residence belonging to him before his marriage to the extent of eight thousand one hundred and eighty-seven 81/100 dollars.

Inasmuch as it is sought to charge defendant with all of the items of the inventory made prior to the marriage of Mr. Provost, paragraphs 26 and 27 assert the proposition that she is not liable for the property carried in said inventory, more particularly the real estate which continues as an asset of the separate estate.

"XXVIII. She avers that all of the movables, cattle, live-stock carried on said inventory have yielded to the inroads of time, and that all of the same have been replaced by new purchases after her marriage with Mr. Provost, and that all of the payments made for these purchases were made out of community funds; that all of the improvements of a movable nature on Right-Way Plantation and as shown in the inventory made in the Succession of Joseph A. Provost, made by Ventress J. Smith on the 18th day of November, 1932, constitutes items replenishing or restoring those which had been lost, either by death, decay or otherwise, and that said items are carried from Item No. 12 down to Item No. 40, aggregating the sum of ———— Dollars, and which were purchased with the community funds, and which belonged to the community.

"In the alternative, if the Court holds that it belongs to the separate estate then an accounting is due to the community to the amount carried on the inventory hereinabove referred to, the said property en-

hancing the value of the separate estate in that amount.

"XXX. She avers that for a number of years prior to his death, her husband made heavy losses in his annual operations; that either the amount of these losses or the gifts of his descendants exceed more than twice the amount cash which might have belonged to the separate (his) estate; that all of the revenues after her marriage became community property and that he had the control of all funds, disposed of them as he saw fit, but that, with the exception of the comparatively small proportion of his separate cash, the heavy expenditures on his own properties were made out of community funds and the right is reserved for an accounting if the decree of Court makes it necessary."

Defendant's prayer is as follows:

"Wherefore, she prays that all and singular the demands of the plaintiffs be rejected; she further prays that under the terms of the said last will and testament, she be decreed to have inherited and to be the owner of the one-third of the properties left by the deceased, whether separate or community, including in said one-third the special bequests made to her at their just valuation.

"She prays in the alternative, that if there be judgment denying her the one-third as set forth above, then that there be reserved to her the right to an accounting for all monies due her by the separate estate of Joseph A. Provost, used by him for the benefit of his separate estate as set forth in the foregoing answer.

"She prays in the further alternative that if this Honorable Court, contrary to the exceptions heretofore filed and again reserved, were to decree upon the rights of the parties under the various claims set forth in the petition and answer, that there be judgment decreeing the separate estate of Joseph A. Provost to be indebted unto her in each and all of the various sums belonging to the community which were used by him for the improvement of his separate estate, and for the reimbursement of the community funds by him donated to the petitioners."

In his written opinion in this case, the trial Judge held that: "The claim of Defendant for funds expended by the community or the separate estate, and for a re-imbursement thereof is not tenable at this time. Nothing more than the enhanced value, if any, can be recovered. Article 2408, Rev.Civ.Code; Peters v. Klein, 161 La. 664, 109 So. 349. There being no proof submitted in support thereof, there is nothing to be considered by the Court. However, Defendant's rights are reserved to her in that respect, as prayed for." T. vol. 1, p. 106.

There was judgment against the plaintiffs, who prosecute this appeal, rejecting their demands. The only complaint which is made by defendant, appellee, is that the costs are cast on the estate. In answer to the appeal, it is prayed that these costs be taxed against plaintiffs.

6. The defendant does not deny the collection of the various items claimed by plaintiffs. By alleging the commingling of the community funds with the separate

funds of the decedent, plaintiffs have destroyed the identity of the separate funds. It would not be possible, under such circumstances, to tell what part of a check drawn upon this common fund consisted of either separate or community funds. This Court has held, therefore, that "the confusion of separate and community funds in making up the consideration would make the property purchased community property. Reine v. Reine, 170 La. 839, 129 So. 364; Succession of Coste, 43 La.Ann. 144, 9 So. 62; De Sentmanat v. Soule, 33 La. Ann. 609." Houghton v. Hall, 177 La. 237, 246, 247, 148 So. 37, 40.

"In order to hold the community liable for the proceeds of separate property of the husband, received and expended by him, during the existence of the community, it must be proved that such proceeds were invested in property apparently belonging to the community; the mere inference, from the facts that he had received, but no longer had such proceeds, is an insufficient ground upon which to hold the community liable therefor." Succession of Ferguson, 146 La. 1010, 1011, 84 So. 338.

"The husband, being master of the community and also master of his own estate, may invest the funds of either at his pleasure. If he thereby acquires property, it is presumed to belong to the community; but, if he makes a loss, there is no presumption that he lost the funds of the community. So that, if, at a given time, a married man has $50,000 of funds his separate property, and $50,000 of community funds, and he thereafter dies, leaving property worth only $50,000, and acquired during the existence of the community, the whole of it is presumed to have been acquired with the funds of, and to belong to the community, and the mere inference, however reasonable it might appear, that he had invested and lost the funds of the community and his separate funds in equal proportions, would be inadmissible. His heirs would be obliged to rebut the presumption, established by law, that all the effects so left, belonged to the community, and prove, affirmatively, not that the decedent had had separate funds, and that they were no longer to be found, but that he had invested them in the particular property found in his succession." Succession of Ferguson, 146 La. 1010, 1043, 84 So. 338, 349.

"The profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, fall into the community. C.C. art. 2402." Succession of Andrus, 131 La. 940, 60 So. 623, 625. Succession of Viaud, 11 La.Ann. 297; Werner v. Kelly, 9 La.Ann. 60; Hellberg v. Hyland, 168 La. 493, 122 So. 593; Houghton v. Hall, 177 La. 237, 238, 148 So. 37.

"When separate funds or property of the husband have been used to benefit and enrich the community, it will constitute a debt of the community in favor of the husband to the amount of such or the value of such property. But the evidence must establish, with reasonable certainty, *that the funds were thus used or the property thus employed.*

"The community of acquêts and gains includes, at its dissolution, presumptively, everything found in the succession of the deceased spouse, and without reference to

the amount brought into the marriage by the respective spouses." (Italics ours.) Succession of Foreman, 38 La.Ann. 700.

Plaintiffs rely upon the Succession of Cormier, 52 La.Ann. 876, 27 So. 293. The marked difference between that case and the case at bar is, first, the community and separate funds were not commingled; secondly, the husband himself appeared and testified in his own behalf.

It is said by this Court in the Cormier Case (page 296):

"The record discloses that when Moss, Sr., wedded Amelia Cormier, in 1856, the only property then brought into the marriage was by the husband, and that consisted entirely of the assets of the first community, as shown by the inventory taken just following the second marriage. *Moss himself testifies that this property was used, consumed, expended, or otherwise enured to the benefit of the second community,* and, with the exception of the $15 interest in land and the slave, the property was of that character which rendered its use practically unavailing if not consumed and expended or the substance thereof changed in the use. Rev.Civ.Code arts. 534, 536. [Italics ours.]

"Those interested in the second community are certainly in no position to dispute that Moss, Sr., was at the beginning of that community the owner, *quoad* the second community, of the property of the first community. And the second community was entitled to the enjoyment of all the property and effects belonging to the husband at the time of the second marriage. Depas v. Riez, 2 La.Ann. [30] 31.

"But, when the time comes for the settlement of the community affairs, the husband is entitled to claim as a debt due him the value of the separate property *he brought into the community, and which was used for the benefit of the same, and expended and consumed in its use."* Page 882, 27 So. page 296. (Italics ours.)

7. The plaintiffs have not averred any specific use of these separate funds for the benefit of the community, but have depended upon the general proposition that the funds were commingled with community funds, and thereby the community became the beneficiary. The very fact that the petition alleges that the funds were commingled with the funds of the community and were used for its benefit, negatives the proposition that there was any specific use of the separate funds for any provable advantage of the community, and, for this reason, the trial Judge considered the fact pleaded of a specific amount as belonging to the separate estate as admitted.

Plaintiffs have not furnished any direct evidence as to any specific use of these funds, as was done in the Cormier Case, and the exception of no cause of action might well have been maintained, but was overruled. However, as the case was tried upon the merits, we shall take the case as we find it.

8. The general nature of plaintiffs' claims against defendant for the funds of the separate estate of the decedent have already been referred to in this opinion. The specific items of these claims are set forth, beginning with page 31 and ending

with page 55 of the Transcript, volume 1. The answer of defendant to plaintiffs' petition averring these specific items is found in the Transcript, volume 1, beginning with page 57 and ending with page 82.

Because of the voluminous amount of documentary evidence which, if an examination were required, would have consumed weeks in an effort to obtain a proper reflection as to the affairs of decedent, the trial Judge, in connection with an agreement between counsel as contained in the record, appointed two auditors to prepare and present to the court a statement, beginning May 1900 and inclusive of October 10, 1932, of all receipts and disbursements by the deceased, Joseph A. Provost. Transcript, Vol. 3, p. 210.

9. In the recent case of Succession of Roque, 176 La. 711, 146 So. 477, it is said (page 479):

"The only question is whether this community owes anything to the separate estate of the surviving husband for money advanced by him and used for the benefit of this community. The husband's ownership of half of the property as the surviving husband cannot be doubted.

"However, for the husband to recover against the community for separate funds used for the benefit and enhancement of the community, he must not only show that *he had* such separate funds, *but they were actually used for the benefit* of the community. Succession of Breaux, 38 La.Ann.

728; Munchow v. Munchow, 136 La. 753, 67 So. 819; Succession of Ferguson, 146 La. 1010, 84 So. 338; Vicknair v. Terracina, 168 La. 417, 122 So. 276." (Italics ours.)

Necessarily, the same obligation to make such proof rests in this case upon the plaintiffs, the heirs of Joseph A. Provost, deceased.

The trial Judge held that some of the claims which plaintiffs contend belonged to the separate estate fall properly within the community. If such be not the case, plaintiffs cannot recover these claims, because of the commingling of the separate funds so claimed with the funds of the community, first, for the reason that, although plaintiffs have shown the collection of these funds by the husband, they have failed to show that they *were actually used for the benefit of the community;* secondly, for the reason that, had plaintiffs shown that the commingled funds were actually used for the benefit of the community, they could not recover, because of the impossibility of proof by plaintiffs, as to which part of the funds belonged to the community, and as to which part of the funds belonged to the separate estate of decedent.

Under these circumstances, plaintiff's demands were properly rejected in the lower court; and it was correctly decreed that the costs of court be borne by the estate.

Judgment affirmed.