211 So.2d 97 (1968)
Milton J. GOUAUX, husband,
v.
Lois LeBlanc GOUAUX, wife.
No. 7352.
Court of Appeal of Louisiana, First Circuit.
May 27, 1968.
*98 Archie D. Saint, Thibodaux, for appellant.
Donald L. Peltier of Peltier & Peltier, Eugene G. Gouaux, Lockport, for appellee.
Before LOTTINGER, ELLIS and CUTRER, JJ.
LOTTINGER, Judge.
This is a suit to have certain property acquired during the marriage of Milton J. Gouaux and Lois LeBlanc Gouaux, declared to be separate, and in the alternative, if it should be found that the property is community property, then to have the husband declared, as to his separate estate, a creditor of the community estate.
The facts point out that a petition for a separation was filed by the husband, Milton J. Gouaux. A judgment decreeing a separation "a mensa et thoro" was rendered, and a Notary Public was appointed to take an inventory of the property belonging to the community formerly existing between the parties. The inventory listed all assets as belonging to the community, and the husband has come into Court claiming that the real estate, more particularly described as follows, to-wit:
Three (3) certain lots or parcels of ground in the Delaune-Peltier Subdivision of the Town of Lockport, Parish of Lafourche, Louisiana, on the corner of Catherine and Pine Streets, designated according to a map or plat of said subdivision made and executed by J. C. Waties, C.E., dated April 1946, and recorded under Entry No. 69947, as Lots 8, 9, and *99 10 of Block No. 8 of the said Delaune-Peltier Subdivision. Together with all the buildings and improvements thereon and all rights, ways, privileges and servitudes thereto belonging or in anywise appertaining. Being the same property purchased in two separate acts of sale from Myrtle M. Delaune and Alfred C. Delaune before Eugene G. Gouaux, Notary Public, on January 20, 1958, and recorded January 27, 1958, in C.O.D. 231 at pages 317 and 319 under Entry Nos. 156927 and 156928.
is not part of the community and in the alternative, that the community is indebted to his separate estate for separate funds expended by him for the benefit of the community.
Milton J. Gouaux and Lois LeBlanc became husband and wife on November 17, 1956. In the early part of 1958, the Gouaux decided to buy real estate on which to build their home, and in contemplation of same, on January 18, 1958, Milton Gouaux executed a promissory note for $4,750.00, having borrowed the money from an uncle. On the reverse side of the promissory note, the following appears, "January 18, 1958 Paid $500.00 on account." On January 20, 1958, the plaintiff purchased three lots of ground for $4,750.00 cash. The Act of Sale is absent of any declaration by the plaintiff that the purchased property was intended to be separate property. And on February 1, 1958, the plaintiff, for $50.00 cash, purchased the mineral rights on certain of the property purchased on January 20, 1958, again no declaration as to separate property appeared.
On September 24, 1958, the plaintiff sold his interest in the home of his parents, which interest had been inherited by him, for $5,000.00. The proceeds of this sale were deposited to the account of Mr. and Mrs. Milton J. Gouaux in the Raceland Bank & Trust Co. (hereinafter referred to as Raceland Bank). Mr. Gouaux testified that his salary was always placed in the account in the Raceland Bank. It was further testified by Mr. Gouaux that he used this $5,000.00 to pay out the note dated January 18, 1958.
Several days later, on September 30, 1958, the plaintiff sold his interest in a drugstore and other buildings, which interest he had also inherited, for $6,000.00, and this money was also placed in the Raceland Bank account. On November 26, 1958, the plaintiff signed a promissory note for $17,000.00 secured by a mortgage on the property he had purchased on January 20, 1958. This $17,000.00 note represented a loan with the Lafourche National Bank of Thibodaux (hereinafter referred to as Lafourche National Bank), and the $17,000.00 was deposited in an account with this bank, entitled "Mr. or Mrs. Milton J. Gouaux." The plaintiff also transferred to the Lafourche National Bank account the $6,000.00 obtained from the sale of the drugstore and other buildings. The Gouauxs commenced the construction of their home, and from November 28, 1958, to April 30, 1959, they wrote checks on their account in the Lafourche National Bank in the sum of $22,767.52.
Also in 1958, Mr. Gouaux sold certain shares of stock which he had inherited from his mother for $2,065.08. He introduced two deposit slips from the Lafourche National Bank dated May 27 and 28, 1960, and totaling $2,065.08. On cross examination, Mr. Gouaux testified that this money was originally deposited in the Raceland Bank account, but there is no evidence as to when these stocks were sold. By checks dated May 30, 1960, in the amount of $1,200.00, and June 7, 1960, in the amount of $1,000.00, and being payable to the Lockport Lumber Yard, plaintiff contends that he used the proceeds of the stock sale to further pay construction costs on his house.
Then, on September 8, 1962, the plaintiff sold his interest in certain other immovable property, which was inherited, for $21,428.57, and deposited this money in the Lafourche *100 National Bank account. By check dated September 8, 1962, in the amount of $1,529.00, and drawn on the Lafourche Bank account, the plaintiff paid out a loan to the Citizens Bank of Thibodaux for a debt which he could not identify. On the same day, he wrote a check on the same account for $1,800.00 to pay a loan for a Chevrolet car he had purchased, but which was not listed in the inventory. And further on the same day and same account, he paid out the balance of the $17,000.00 loan from the Lafourche National Bank in the amount of $12,519.07. Lastly, on September 10, 1962, and on the Lafourche National Bank account, he wrote a check for $395.84 to the Lockport Lumber Yard, which he testified was for materials used in the construction of the house.
The Trial Court decreed that the above described real estate belonged to the community of acquets and gains which existed between the parties, and further decreed that the separate estate of Milton J. Gouaux was a creditor of the community for the sum of $34,493.65, together with legal interest from date of judicial demand, and for all costs, with the right to be paid from any and all assets belonging to the said community as well as the individual parties.
From the portion of the judgment as to the plaintiff being a creditor of the community, the defendant, Lois LeBlanc Gouaux, has appealed.
The rights of the husband to reimbursement from the community for the use of his separate funds for the benefit of the community does not come into existence until the community is dissolved, Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); and one of the effects of a separation from bed and board is the dissolution of the community of acquets and gains. LSA-C.C. Art. 155. After the dissolution of the community, an accounting must take place, and in such accounting, the separate and community estates are each regarded as an entity for accounting purposes. Demoruelle v. Allen, 218 La. 603, 50 So.2d 208 (1950). The claim of the husband is against the mass of the community, and is not against any particular property or asset. Sharp v. Zeller, supra. And, Denegre v. Denegre, 30 La. Ann. 275, 276, 277 (1878) held that "if the community has been enriched by the separate funds of either spouse it is indebted pro tanto at the dissolution to the separate estate of the spouse whose funds have so enriched it, and this is as much a debt of the community as if it were due to a third person, and must be first deducted from the mass or paid to the spouse to whom it is due before a partition of the common effects."
In the case of the wife seeking reimbursement from the community for use of her separate funds, she must first show that she did in fact once have separate funds. But, the wife must go further, she must show that the funds were either delivered to the husband, or expended for the benefit of the community. Peters v. Norris, 191 La. 436, 185 So. 461 (1938); Downs v. Morrison, 13 La.Ann. 379 (1858). The husband can, of course, rebut this presumption by proving that the wife's separate funds were used only to benefit her separate estate. The proof required by the husband as to his separate funds is more demanding. No presumption exists in favor of the husband that if he prove mere ownership of separate funds at marriage or receipt of them during the community, that these funds were used for community purposes. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Succession of Geagan, 212 La. 574, 33 So. 2d 118 (1947); Succession of Provost, 190 La. 30, 181 So. 802 (1938); Succession of Rogue, 176 La. 711, 146 So. 477 (1933); Vicknair v. Terracina, 168 La. 417, 122 So. 276 (1929); Succession of Ferguson, 146 La. 1010, 84 So. 338 (1920); Munchow v. Munchow, 136 La. 754, 67 So. 819 (1915). After proving that the husband did have separate funds, he must prove that the community received the benefit of these *101 funds, but this proof need not be with absolute certainty. In Succession of Bell, 194 La. 274, 193 So. 645, 647 (1940), the Supreme Court stated:
"There is no fixed rule or standard of proof required to establish that the contribution of the separate funds of the husband has been used to benefit the community. To establish such a claim it must be shown with reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution, and that the separate funds were not wasted by the husband or disposed of for his separate benefit. Munchow v. Munchow, 136 La. 753, 67 So. 819; Succession of Ferguson, 146 La. 1010, 84 So. 338; Succession of Provost, 190 La. 30, 181 So. 802."
The Trial Court found that the property as above described was community property, from which judgment neither of the parties has appealed, and therefore this matter is not before this Court.
We are of the opinion that the plaintiff, Milton J. Gouaux, has sufficiently proved that he either had at marriage or received during the community separate funds totaling $34,493.65. But as above stated, this alone does not create a presumption that this money was used for the benefit of the community. This he must prove to a reasonable certainty.
In arriving at the total indebtedness of the community to the separate estate of the plaintiff, the Trial Court found that the property on which the home was built was purchased for $4,800.00, and the plaintiff borrowed $5,000.00 from an uncle to pay the purchase price. He further found that the plaintiff used the entire proceeds of the September 24, 1958, sale of $5,000.00 to pay this loan back. The record indicated that the plaintiff executed a promissory note for $4,750.00, which the plaintiff testified represented the money borrowed from his uncle, and immediately paid $500.00 on the note, as evidenced on the rear of the note. This payment was unquestionably prior to the sale for $5,000.00. Therefore, as of January 18, 1958, the plaintiff only owed his uncle $4,250.00 on the note, and we feel that if he used any money from the $5,000.00 derived from the sale of inherited property to pay out this note, it must be limited to $4,250.00.
The defendant contended that all of the monies derived from sales of inherited properties excluding the sale of the property for $21,428.57 were deposited in the Raceland Bank account, and were so commingled with community funds as to lose their identity. Mr. Gouaux testified that his income for 1958 was $10,967.10; for 1959, $8,750.72; for 1960, $9,432.86; for 1961, $11,594.26; and 1962, $18,694.19. It may be true that under certain factual situations "it would be practically impossible to deduce that the separate funds, when spent, had been used to enhance the community." Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12, 22 (1956), but where it can be shown that the money derived from separate funds, though commingled, was used to benefit the community, the claim for indebtedness should be allowed. The plaintiff testified that he used the funds from this $5,000.00 sale to repay his uncle, and considering the short length of time this money could have been in the community account prior to its use, we are of the opinion that it did not lose its separate identity, at least as to the money which was withdrawn to pay out the note, say $4,250.00.
The Trial Court next concluded that the house which was built was valued at approximately $42,000.00. This figure apparently included the value of the land. The Trial Court apparently arrived at this figure from the testimony of the plaintiff, and from the valuation, i. e., $40,000.00, placed on the property in the inventory. In examining the record, there is no question but that it is claimed that the house and property either costs $40,000.00 or is worth this amount, but we have failed to *102 find any proof that this amount of money was spent.
There is no question but that the $17,000.00 borrowed from the Lafourche National Bank was a community debt, and therefore this $17,000.00 belonged to the community. The $6,000.00 derived from the sale of separate property on September 30, 1958, was originally placed in the community bank account in the Raceland Bank, and approximately two months later was transferred to the Lafourche National Bank account and placed in the same account with the $17,000.00. We do not feel that merely because the $6,000.00 was commingled with the community funds in the Raceland Bank account for two months deprived it of its separate identity. Therefore, as of approximately November 26, 1958, there was $23,000.00 in the Lafourche National Bank which consisted of $17,000.00 belonging to the community, and $6,000.00 belonging to the separate estate of the plaintiff. There is also no question but that from November 28, 1958, to April 30, 1959, $22,767.52 in checks were written on this account. Since there is no presumption that separate funds have been used to benefit the community, we must conclude that the community funds were used first. Therefore, as of April 30, 1959, there would be remaining in this account the sum of $232.48 of separate funds. The plaintiff would have therefore used $5,767.52 of his separate funds for the benefit of the community.
The plaintiff further testified that he sold certain stocks for $2,065.08 in 1958, and this money was deposited in the community account with the Raceland Bank, and on May 27 and 28, 1960, transferred to the Lafourche National Bank. The fact that the plaintiff did sell these stocks, which were separate property, for this price was not disputed. Even though this money stayed in the Raceland Bank account for approximately two years, we are of the opinion that the plaintiff has shown sufficiently that his separate funds did not lose their identity. With this money, and what funds were left in the Lafourche National Bank account, all being separate and totaling $2,297.56, the plaintiff wrote checks on May 30 and June 7, 1960, totaling $2,200.00 in payment of materials for the house. There is no doubt that this $2,200.00 was being used for the benefit of the community.
Lastly, on September 8, 1962, the plaintiff sold separate property totaling $21,428.57, which was deposited in the Lafourche National Bank. This amount combined with the $97.56 of separate funds still in the account would bring his balance to $21,526.13. But of this amount, the plaintiff has only shown where $12,914.91 was used for the benefit of the community. The plaintiff testified that he paid out the balance of the November 26, 1958, promissory note, being the amount of $12,519.07. There was no evidence introduced that any separate funds had been previously used to make payments on the promissory note. And, the plaintiff further testified that on September 10, 1962, he wrote a $395.84 check to the Lockport Lumber Yard for payment of materials used on the house.
There is testimony to the effect that the plaintiff wrote a $1,529.00 check on September 8, 1962, to the Citizens Bank of Thibodaux, but the plaintiff could not identify this indebtedness. It was admitted by the plaintiff that this indebtedness did not represent materials for the house. There is no question but that the plaintiff has here failed to prove to a reasonable certainty that this money benefited the community.
Further, the plaintiff wrote a check on September 8, 1962, for $1,800.00 in payment of a loan for a Chevrolet car he had purchased. We have noted in the inventory that a Chevrolet automobile is not listed as an asset, and therefore must conclude *103 that at the time the inventory was taken, the community of acquets and gains did not own this automobile. In the Succession of Bell, supra, the Supreme Court concluded that the community must still be receiving the benefits of the separate funds at the date of its dissolution. There is no question but that the community did not have the benefit of this Chevrolet automobile at the date of its dissolution. Further, there is no evidence as to whether the community received any trade-in value on this automobile, and therefore we are of the opinion that as to this $1,800.00 the plaintiff has not carried the burden of proof.
The amount of indebtedness is determined by the amount of money spent for the benefit of the community. Under the facts as presented by this record, and under our interpretation of the law, the community would be indebted to the separate estate of plaintiff for the following amounts: $4,250.00 which was used in payment of real estate; $5,767.52 originally spent on construction of house; $2,200.00 and $395.84 as later expenditures on construction of house; and $12,519.07 used in paying out $17,000.00 note. These amounts come to a total of $25,132.43. As to the remainder of the money derived from the sale of the plaintiff's separate property, there was no evidence introduced as to what was done with this money, and we cannot presume that it was used for the benefit of the community.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is amended to reduce the indebtedness of the community of acquets and gains which had existed between Milton J. Gouaux and Lois LeBlanc Gouaux to the separate estate of Milton J. Gouaux from $34,493.65 to $25,132.43, and as amended, the judgment is affirmed. All costs of this appeal to be paid by plaintiff-appellee.
Judgment amended and affirmed.