417 So.2d 419 (1982)
Beth Burns PATTERSON
v.
Bobby Hurst PATTERSON.
No. 14943.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*420 William H. Cooper, Baton Rouge, for plaintiff-appellee Beth Burns Patterson.
William C. Shockey, Neil H. Mixon, Baton Rouge, for defendant-appellant Bobby Hurst Patterson.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
This is an action brought by Beth Burns Patterson against her former husband, Bobby Hurst Patterson, to partition the effects of the community of acquets and gains formerly existing between them. The former wife filed suit for separation from bed and board on April 22, 1976. The husband reconvened likewise seeking a separation from bed and board. The matter culminated in a judgment of divorce rendered on *421 December 15, 1976. The former wife filed the present action on March 25, 1977, for partition of the assets of the community formerly existing between them.
The husband at trial on the merits claimed certain credits against the community. The trial court allowed certain credits and disallowed others. Mr. Patterson has appealed. Mrs. Patterson, now Ms. Hudson, neither appealed nor answered the appeal. Thus, the sole question before us is whether or not the trial court erred in denying Mr. Patterson certain credits. The credits that were disallowed involve (1) corporate loans allegedly used by Mr. Patterson to pay for community property on Tiger Bend Road and to meet certain community expenses, (2) additional reimbursement to Mr. Patterson surrounding sale of 500 shares of Florida Gas Company stock, (3) accounting fees paid by Mr. Patterson in addition to those for which reimbursement was allowed, and (4) alimony pendente lite paid by Mr. Patterson to Mrs. Patterson.
(1) Mr. Patterson testified that he was sole owner of International Systems Limited, a corporation, and owner of fifty per cent of the stock of another corporation, Management Systems & Studies, Inc. He testified that during the existence of the community these corporations lent sums of money to Mr. Patterson, which he used to make a down payment on property on Tiger Bend Road, a community asset, and to meet community obligations.
Sufficient evidence is lacking that this is a valid claim. There is almost no evidence that any money was ever lent, or the money thus lent was used by the community, or that the alleged debts were paid by Mr. Patterson individually. In evidence are checks from the corporation payable to Mr. Patterson. However, no notes or other evidence of loans were introduced other than notes that were supposedly given as renewals of the original notes. There is no evidence that Mr. Patterson, if he indeed obtained the loans, ever paid over the funds to the community or used the funds for the benefit of the community.
As to payment, the renewal notes are not marked cancelled. The sole evidence that would tend to indicate payment is in a pair of corporate income tax returns, one prepared before and the other after the supposed date of repayment, which taken together indicate that unspecified loans to a shareholder, larger in amount than the loans to Mr. Patterson, had been discharged. There are no cancelled checks. It is not even shown that Mr. Patterson's separate funds or assets had anything to do with the discharge of the supposed loan.
The burden of proof is on the party claiming he made loans to the community to show that separate funds existed and that those funds were used for the benefit of the community. Succession of Provost, 190 La. 30, 181 So. 802 (1938); Succession of Videau, 197 So.2d 655 (La.App. 4th Cir. 1967), writ refused 250 La. 920, 199 So.2d 922 (1967).
As clear proof is wholly lacking of the loans by the corporations, of the use of such loans by the community, or of their repayment, we find the trial court was correct in denying those items as claims against the community.
(2) Mr. Patterson testified that he sold certain separate property for $4,872.44, and used that sum, together with another corporate loan in the amount of $4,000.00, together with community funds, to purchase 600 shares of stock in Florida Gas Company for a total price of $9,501.69. Five hundred shares were issued in Mr. Patterson's name, and one hundred in Mrs. Patterson's name. The five hundred shares held by Mr. Patterson were sold for $9,482.32.
The trial court treated all six hundred shares as community property. It allowed Mr. Patterson reimbursement for the $4,872.44 obtained from the sale of Mr. Patterson's separate property. It ordered the community reimbursed for the difference between the sale price of $9,482.32 and the sum proved to have been advanced by Mr. Patterson ($4,872.44). It ordered the one hundred shares held in Mrs. Patterson's name partitioned in kind between Mr. Patterson and Mrs. Patterson.
*422 Mr. Patterson claims credit for the alleged corporate loan of $4,000.00 in connection with the purchase of the Florida Gas Company stock. Again, proof and exactness are lacking. We have thoroughly examined the record and find the claim unsupported.
Mr. Patterson claims a greater share of the profit. There was obviously a profit involved in the sale of the Florida Gas stock, as six hundred shares were bought by Mr. Patterson for $9,501.69 and five hundred shares were sold for $9,482.32. However, the entire difference between the purchase price of $9,501.69 and the sum of $4,872.44 was awarded to the community. Thus, the profit goes to the community, and, ultimately, one-half to Mr. Patterson. He thus obtained an equitable portion of the proceeds of the sale of the Florida Gas stock.
(3) Mr. Patterson claims an additional credit in the sum of $5,941.10 paid to Seidman & Seidman, Certified Public Accountants, Baton Rouge. The trial court allowed credits for the sum of $347.00 paid Seidman & Seidman, and for $966.00 paid to the firm of Ourso, McFadden & Salins, Certified Public Accountants, Baton Rouge. The sum of $5,941.10 is shown on the Seidman & Seidman statement as "Balance forward". As Mr. Patterson has not sufficiently demonstrated that the balance brought forward is derived from a community debt, we find the trial court acted properly in denying that item.
(4) The minutes of court in the prior divorce proceeding show that Mr. Patterson was ordered to pay Mrs. Patterson $900.00 per month alimony pendente lite. These sums were paid for eight months, until divorce, and came to a total sum of $7,200.00. Mr. Patterson contends the payments of alimony pendente lite constitute a credit against the community.
In support of the proposition that alimony pendente lite constitutes a community debt, rather than a debt of the husband's (or paying spouse's) separate estate, Mr. Patterson relies upon Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956). Messersmith held that alimony pendente lite should be paid out of community funds, relying upon Tanner v. Tanner, 229 La. 399, 86 So.2d 80 (1956), which held that the community of acquets and gains is dissolved not as of the date of filing of a suit for separation or divorce, but as of the date of judgment of separation from bed and board or divorce.
However, Tanner was legislatively overruled by an amendment to LSA-C.C. art. 155 adopted by La. Act No. 178 of 1962, which expressly provided that the termination of community by judgment of separation from bed and board or divorce was retroactive to the date of filing suit. Messersmith's holding that alimony pendente lite should be paid from the community was based on the fact that the community still existed. However, under the present C.C. art. 155, that is no longer the case. The community ceases to exist retroactively as of the date of filing suit for separation or divorce. Thus, the reasoning in Messersmith, if anything, now supports the proposition that the party from whom alimony is due cannot obtain reimbursement from the community.
The Fourth Circuit so held in Palama v. Palama, 323 So.2d 823 (La.App. 4th Cir. 1975), writs refused 326 So.2d 381 (La. 1976), and in Gondrella v. Gondrella, 347 So.2d 938 (La.App. 4th Cir. 1977). Furthermore, this circuit has held that alimony pendente lite is not a debt which is to be reimbursed from the community. Lupo v. Lupo, 366 So.2d 932 (La.App. 1st Cir. 1978). Thus, Mr. Patterson has no claim for reimbursement from the community for alimony pendente lite paid by him to his former spouse, Mrs. Patterson.
Mr. Patterson argues that the alimony paid Mrs. Patterson was paid under the authority of LSA-C.C. art. 148, as it stood in 1976, which codal article in its then existing form was ruled unconstitutional as gender-based in Smith v. Smith, 382 So.2d 972 (La.App. 1st Cir. 1980), which is based upon the holding in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), which held *423 a similar provision of Alabama law unconstitutional. However, nothing in Orr or in Smith indicates that a credit exists for alimony payments made under prior law, or that such earlier alimony payments should be remitted to the party paying them. Such a result as suggested by Mr. Patterson is both beyond the breadth of the holdings in Orr and Smith and contrary to the sound administration of justice.
We find the trial court acted correctly in denying Mr. Patterson a credit from the community for the sum of $7,200.00 paid by him as alimony pendente lite.
The judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.