*1492 The opinion of the court was delivered by
Breaux, J.
All the parties appealed from a judgment homolo-gating an account of administration of the succession of the late Joseph Webre. It was offered by the administrator as a final account, and as such it was filed in the lower court.
The surviving widow in community, Mrs. Aloysia Reulet, opposed the homologation on different grounds, set forth in her opposition.
An opposition was filed by Louis S., only issue of the first marriage of Joseph Webre, and by Edward, John and Gabriel, issue of his second marriage.
Elizabeth, a minor daughter of Aloysia Reulet, is the only issue of the third marriage of Joseph Webre.
All the items in the account are opposed.
The great difference between the widow in community on the one hand and the heirs of age of Joseph Webre on the other is, relatively speaking, in regard to the value of the succession, and the value of the community.
The contention on the part of the heirs is that the judgment is erroneous, in that it fixed at too small an amount the assets of the succession.
The widow, per contra, opposes on the ground that the net amount of the community is much larger than decreed.
The heirs seek to support their contention by reference to the evidence, it is asserted, of what the community has made during its existence, from December, 1885, the date of his marriage with the present opponent, Mrs. Reulet, to the date of his death, in 1895, which was much less, they say, than allowed by the judgment from which they appealed. To sustain the position that the separate estate of the decedent, and not the community, should be credited with the amounts they mentioned, they endeavored to prove that the inventory of the second community, which was dissolved by the death of the second wife of Joseph Webre, does not represent the total value of their father’s succession, at the date it was taken, but only the value of the community which had been dissolved a year anterior to the taking of the inventory; that their father did not include in the inventory his own personal acquisitions made between the date the community was dissolved and the date the inventory was. taken, listed and appraised; that he only disclosed the value of the community property at the date of his second wife’s death. More than *1493 fifteen thousand dollars, it is charged, were acquired between these two dates, for which they have not received credit claimed.
In support of their position they also aver that between the dates of his first wife’s death and his second marriage, their father acquired personal property and cash worth four thousand dollars, and had real estate worth five thousand dollars, which formed part of his separate estate.
In round numbers, in their oppositions, setting forth different items, they claim that he was worth sixty thousand dollars when he married the second time, and that their father was worth more than that sum when the third community was dissolved. To sustain this averment the evidence should prove that the sum of fifteen thousand and nine thousand dollars went into the community, although they were not carried into the inventory made a short time prior to the last marriage.
With reference to the last community for various alleged reasons, the heirs, representing the separate estate, urged that it not only lost money, but that it was considerably in debt to the separate estate of the husband, their father.
The insistence of the widow, on the other hand, who claims for the third community, in opposition, is, that payments were made during the community, with community funds; of debts contracted before the marriage, to the credit of which the community is entitled.
She also contended in the District Court that the law charges, administrator’s commission, funeral expenses and the like, contracted after the death of her late husband, are not chargeable to the community. This was sustained by the judgment and the community was not charged with costs' and attorney’s fees.
She, in addition, complained of an overcharge of thirty-six hundred dollars, proceeds of the sale, during the community, of separate property of the decedent, which was not used for the benefit of the community. This objection to the account was not sustained by the judgment. The community remained charged with the amount.
She charged that the administrator has received, but has omitted to account for, the share accruing to the separate estate of the decedent out of the profits of the crop of 1895, amounting to two thousand one hundred dollars and eighty-seven cents. We have not found that the separate estate was credited with this sum.
There is a community debt, not mentioned on the account, which *1494 was admitted since the judgment was rendered in the lower court, and which all agree should be charged.
After recasting the account filed, the judge of the District Court made the following final distribution:
Half the community to the survivor.$19,865 26
Her share paraphernal funds. 2,000 00— $21,865 26
Other half of community to succession. 19,065 26
Separate property. 46,811 22— 66,676 48
Add community debts. 22,496 46
Less amount allowed above. 2,000 00— 20,496 46
$109,088 20
Making the share of the widow in community twenty-one thousand eight hundred and sixty-five dollars and twenty-six cents, and the shares of the five heirs in the succession fifty-nine thousand two hundred and seventy-six dollars and forty-eight cents, to be divided into five equal parts; Mrs. Webre reserving her right of usufruct on the share of her minor child Elizabeth.

The Separate Estate of the Decedent vs. The Third Community.

No one disputes the proposition of law that property found in the husband’s possession at his death presumably belongs to the community. To meet this presumption the heirs urged that the evidence showed what the community has made duringthe ten years, less few days of its existence, and what it has expended. In our view an extreme position is taken by the heirs in opposition to the claims of the third community; that it has no profits at all; in other words, that the whole amount carried as community profits belongs to the separate estate.
This contention, we think, is not sustained by the facts as we appreciate them.

Property not in Existence at the Dissolution of the Community should not he charged.

Before taking up that question we will state with reference to the opposition to the items placed upon the account, as assets of the community and items placed upon it as liabilities of the community, which were not in esse at the date of its dissolution, that as thereon placed, both were, in our judgment, properly excluded by the judgment. The community consists of profits — i. e., the fruits of the separate property of the spouses fall into the community, also the fruits of their industry. Property disposed of at the date of the dissolution of the community should not directly figure as an it?m of debt or credit, although it may enter into an account as an item and *1495 be considered in fixing balances of profits or balances of losses of the community.
This was the ruling of the judge a quo who properly, in our view, .amended the account by striking therefrom items relating to property once owned in community, but which no longer belonged to ithe community.
We return to the principal question arising from claims set up by ■the separate estate of the decedent represented by the children of .two preceding marriages against the widow and third community.

Expenses of the Family and Interest Received.

The first item of expenses, which attracted our attention, claimed •by the heirs is an item of twenty-five thousand dollars, living expenses for the ten years of the community.
We do not think that this item is sustained by the evidence for an amount as large.
The estimate of a witness is the only evidence sustaining a claim for so large an amount. The amount stated in the memoranda of the decedent was considerably less. He resided on his plantation, and managed with frugality and was prudent in expenditures. He had gardens, poultry, cows and other contributing sources of support on the well managed farm.
Instead of allowing this amount as a charge againt the community, we conclude, as the District Judge must have concluded, that the interest on the bonds and notes which were held by the late Mr. Webre about paid the living expenses of his family and his own.
This large amount is sufficient to account, to great extent, for the difference between the two, the separate estate and the community.
If it was, as we think, more than compensated by the interest which the head of the community must have collected, of which no account was rendered, it makes a considerable difference in the calculations of the heirs representing the separate estate.
The other amounts placed to the credit of the community, as community profits, are, in our opinion, amply sustained by the evidence and the presumption of law relative to property acquired during the community.
We note the contention of the heirs that another amount, admitted since the lower court has fixed the value of the succession and of the • community, is still to be deducted, and that it increases, it is con *1496 tended, the difficulty (rather rendering it impossible) of determining that the community had any assets at all.
We will return to this subject later.

Separate Estate.

After having examined into the financial condition of the community, we passed to the separate estate of the late Joseph Webre and found that the difficulty of tracing the items of cash claimed by the heirs, as to the separate estate, was as great and even greater than it was to trace up the items of cash with which the property of the last community was bought.

Books Kept by the Head of the Community.

We deem it in place, at this time, to pass upon the objection raised by the survivor in community to the admissibility of books alleged to have been kept by the late husband prior to and during their marriage, on the ground that she was not aware that such books had been kept and that she was as to them a third person.
Her husband had interest in two or more partnerships, whose business transactions were recorded in their books. Many of the entries were those of these partnerships. It was evidently the intention to keep correct statement. But they are not as complete a statement of transactions as they might have been. The memoranda were doubtless important in matter of the daily business of the late Mr. Webre, but are not of any very high value in after years, not being a complete record. Many of the items were proven by other testimony.
We, therefore, will treat these books or memoranda as the merest commencement of proof.
We have made this statement about the books because there is a decided inclination on the part of the heirs to have amounts charged as entered in the books, even where there is no corroborating testimony.

Profits of Separate Estate.

Without reference to the books, it appears to us that the means of the separate estate were large enough to produce the amount which is put down as its assets in the judgment of the District Court. It is fair to presume,.with the same management during a decade preceding that of the third community, about the same profits were made. These profits are not all carried on the inventory. Two crops were made after the date of the inventory and just preceding the last *1497 marriage which could not figure as part of the separate estate, for the reason that they were made after the date of the inventory. Other transactions during the same time were necessarily not included for the same reason.
After having considered the amount of capital of each, the community and of the separate estate as shown by the testimony of witnesses entirely corroborating certain entries in the books, the inventories and other evidence, we concluded not to disturb, in this particular, the judgment of the learned judge of the District Court.
In reaching this conclusion, we have not overlooked the contention of the heirs that the separate estate was much larger than appeared by the inventory for the reason that it included only the property in which the second wife had an interest, and not the separate property of Joseph Webre.
The administrator, who is an heir, testified that it was complete as to the movable property, and, possibly, did not make a full showing of the immovable property. This is supported, we think, by the proces verbal of inventory. Be that as it may, while we agree that all credits to the separate estate were properly given, we would not feel justified in increasing the amount of credit of the separate estate.
The character of the late Joseph Webre, as shown at the bar and by the evidence, has great weight in reaching the conclusion that the inventory made at his instance a short time prior to his last marriage is correct; also, that the settlement made by him with the children of his second wife, after her death, was a complete, full and fair settlement, and went far toward representing the condition of his affairs at the time. We believe that he paid this separate indebtedness with separate funds. One of our reasons for so concluding is, for instance, that the Torres notes, bought after his third marriage, with separate funds, we think, which were afterward transferred to these children in part payment of their claim, were not mentioned as notes belonging to the community, but the notes of the community were all mentioned. In our opinion, these amounts could not be credited to the community, as claimed by the survivor in the community.

Crops for which Account is Claimed.

Counsel for Mrs. Webre directs our attention to the fact that the administrator testified that there are other profits on the crops made *1498 by the separate property, which the account failed to explain. In the account to be filed the administrator will have to render an account and show what disposition was made of these profits.
The same is true of the crop of 1896; no account could be rendered of the crop of that year, as it had not been sold when the account was filed. The right is reserved to all parties concerned to require an accounting for the crops of that year.

A Claim Allowed by Agreement of All Concerned.

There was a community debt, not mentioned in the account, to which the attention of the District Judge was not called; it was only after the hearing of the case the attorneys agreed as to the items and the amount. It was recognized as due, and will be mentioned in the account to be rendered. The amount is twelve thousand three hundred and sixteen dollars and eighteen cents.
In view of the fact that there are assets yet remaining which will be added to the active mass of the community, we think that this indebtedness, after it will have been entirely paid, will leave an amount equal to that heretofore allowed to the credit of the community.

Presumably the Amount was Applied to the Benefit of the Community.

The widow Webre complains that the charge of thirty-six hundred ‘dollars, price of separate property of the husband sold during the community, and which, she says, was charged to the community without proof that it was invested in matter of the community.
The community would not, without this amount, have made the purchases it made for its account. The funds, calculations and estimates based upon the evidence would have been exhausted. In other words, this indebtedness of the community is consistent with purchases for its account and with its accumulation of property. The community could not have bought property and paid expenses without that amount.

.Betterment of Separate Estate.

There were improvements placed on real estate of the husband during the community with the value of which it was properly credited, we think. Keeping account of the accumulations and of the management, justifies the conclusion that there were earnings ■enough made by the community out of which to pay for these *1499 improvements. The result proves, in our judgment, that they were due to the common labor or industry. R. O. 0. 2408.

Costs of Settling Estate and Community.

The heirs object to the item of thé account, five thousand two ■hundred dollars, which is chiefly made up of costs, lawyers’ fees, court costs, administrator’s fee for settling the succession and the community — both were equally benefited. There is no reason to burden the separate estate alone with this espense. The adminis"trator was equally responsible to both the community and the sepa - rate estate, and in effecting sales, defending actions and in all the ■proceedings he represented both. The mass from which the portion •of each is taken should be held for the expense, and in that way the h' irs will pay ia proportion to their interest and the survivor in •community in proportion to heis.

Rights of Survivor in Community.

And lastly it only remains for us to say that the opponent, Mrs. "Webre, is the owner of half of all the community property, to the possession of which she is entitled, also to the usufruct of the share ■coming to her minor daughter.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by charging the community and the ■separate estate, in proportion to the interest of each, with the sum •of five thousand and two hundred dollars, less the sum of forty-nine dollars, and that an account be given by the administrator of the ■sum of two thousand one hundred dollars and eighty-seven cents; also that an account be given of the profits of the crop of 1896 when ascertained, and that, in accordance with an agreement, the community be charged with the sum of twelve thousand three hundred ■and sixteen dollars and eighteen cents.
With these amendments, it is decreed that the judgment is .affirmed at appellees’ costs.
Me. Justice BlaNchaed takes no part in this decision, not having ■been a member of the court when the case was argued.
Nicholls, C. J., absent; ill.