197 So.2d 655 (1967)
Succession of Irene SELLARS, wife of Jules L. VIDEAU.
No. 2501.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1967.
Rehearing Denied May 1, 1967.
Writ Refused June 9, 1967.
*656 Deutsch, Kerrigan & Stiles, Marian Mayer Berkett, New Orleans, for Jules L. Videau, testamentary executor, appellant.
*657 Kepper, Moulin & Kepper, Stewart J. Kepper, New Orleans, for Mrs. Valda Videau Farrell, appellee.
Before McBRIDE, JANVIER and BARNETTE, JJ.
BARNETTE, Judge.
This appeal is from a judgment maintaining an opposition to the descriptive list of succession property filed by the testamentary executor, in respect to two items in dispute, and dismissing the opposition in respect to two other items in dispute.
The decedent Mrs. Irene Sellars Videau was the third wife of Jules L. Videau. Two daughters were born of their marriage, both of whom have survived their mother. The opponent Mrs. Valda Fay Videau, Farrell, Jr., wife of Thomas C. Farrell, Jr., is one of these daughters and is therefore a forced heir.
Mr. Videau, the surviving husband of decedent and the testamentary executor of the succession, has appealed from the judgment insofar as it is adverse to him in the two respects mentioned. Mrs. Farrell answered the appeal in this court and prays for affirmance of the judgment in the two respects favorable and for reversal in the two respects in which it is adverse to her. In our reference to them in this opinion, we will avoid the use of "appellant" and "appellee" to prevent confusion.
Mrs. Videau left an olographic will which was presented for probate, part of which included the following bequest:
"I bequeath to my said husband, Jules L. Videau, the usufruct of my entire estate for his life, without bond. I bequeath the naked ownership of so much of my estate as shall constitute the legitime allowed her by law to my daughter Valda Fay [Mrs. Farrell]; and I bequeath the entire remainder of my estate to my daughter Marion Sellars [Mrs. Johnston]."
The items in dispute are: (1) six insurance policies on the life of Mr. Videau, assigned to and owned by Mrs. Videau at the time of her death; (2) thirteen United States War Savings Bonds, Series E, issued to Jules L. Videau or Mrs. Irene Sellars Videau; (3) $51,938.28 claimed by Mr. Videau as a debt of the community due and owing his separate estate; and (4) a retirement annuity of Mr. Videau under contract with Aetna Insurance Company.
We will dispose of each of these issues in the order mentioned above.

LIFE INSURANCE POLICIES
At the time of her death, Mrs. Videau owned six insurance policies on the life of her husband. Five of these were issued by The Massachusetts Mutual Life Insurance Company, the other was issued by The Equitable Life Insurance Society of the United States. Jules L. Videau is the insured; his wife, Irene Sellars Videau, or her executor or administrator (in five policies) or her legal representative (in one policy), the owner; Mrs. Videau was named the primary beneficiary and her daughter Mrs. Marion V. Johnson, the alternate beneficiary. The right to change beneficiaries was specifically granted to the owner, Mrs. Videau, by a rider attached to each of the policies. All rights and privileges concerning the policies (which would include surrender for cash value) were also granted to the owner, Mrs. Videau.
Mr. Videau, as testamentary executor, contends that the life insurance policies owned by Mrs. Videau at the time of her death, but payable to a named alternate beneficiary, do not become part of the decedent's estate. His argument is based mainly on the wording of LSA-R.S. 22:647, subd. A which states:
"The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, *658 heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use."
It is contended by the executor, Mr. Videau, that the exemption of "proceeds and avails" in favor of the beneficiary includes the cash surrender value of the policies. The question then presented is whether the cash surrender value is considered to be "proceeds and avails." Numerous cases are cited in support of the argument that a beneficiary takes the proceeds or avails of a life insurance policy free from the claims of policy owners, heirs, creditors, etc.
As final support for his argument, he contends that LSA-R.S. 22:647, subd. C makes it clear that this exemption applies, especially if the owner should predecease the person whose life is insured. LSA-R.S. 22:647, subd. C provides in part as follows:
"The provisions of Sub-section A and B of this Section shall apply:
* * * * * *
(2) Whether or not the policy or contract is made payable to the person whose life is insured, to his estate or to the estate of an annuitant if the beneficiary, assignee or payee shall predecease such person; except, that this Sub-section shall not be construed so as to defeat any policy or contract provision which provides for disposition of proceeds in the event the beneficiary, assignee or payee shall predecease the insured or annuitant."
In answer to these contentions it is our opinion that the exemption provided under LSA-R.S. 22:647 does not apply in the case before us. Where the owner of a life insurance policy reserves the right to change beneficiaries, the right of a named beneficiary to the proceeds or avails does not vest until the death of the insured. Pollock v. Pollock, 164 La. 1077, 115 So. 275 (1927); Dorsett v. Thomas, 152 La. 60, 92 So. 734 (1922). Here the owner, the deceased, had the contractual right to change beneficiaries, and the rights of the secondary beneficiary to the proceeds or avails were dependent upon the will of the owner. The proceeds of the policies will not become available and, hence, will not vest with the beneficiary until the death of the insured who is still alive. While Mrs. Johnston is the named beneficiary at present, she has no assurance that she will be at the time of the insured's death. Thus, Mr. Videau's argument on this issue based on LSA-R.S. 22:647, subd. A has no validity since the secondary beneficiary has no vested interests in the policies at the present time. The many cases cited by him supporting this argument are without value since in all such cases the insured party was dead at the time of the claim and the right to proceeds had vested in the beneficiary.
Mr. Videau tries to draw a distinction between "proceeds" and "avails," and claims that "avails" includes cash surrender value. We think no distinction can be made between "proceeds" and "avails." The two words are synonymous both in their dictionary meaning and their use in other jurisdictions. Although no Louisiana jurisprudence could be located which specifically so holds, other jurisdictions have held the two words to mean the same. Sand v. Merchant Nat. Bank & Trust Co., 81 N.W.2d 748 (1957); In re Coughlin Estates, 205 N.W. 14, 53 N.D. 188 (1925), quoting Webster, New International Dictionary; Black, Law Dictionary (4th ed. 1951).
*659 We must reject Mr. Videau's interpretation of the meaning of LSA-R.S. 22:647, subd. C. We believe it to mean that, should the beneficiary predecease the insured and no new beneficiary is named, the exemption of LSA-R.S. 22:647, subd. A shall still apply even though the proceeds go to the estate of the beneficiary. However, should the owner by contract have provided an alternate beneficiary, the alternate beneficiary will get the proceeds free from all claims by the estate or heirs of the primary beneficiary. Such is the case here. A secondary beneficiary was named and she will get all the proceeds when the insured dies, provided the owner of the policy does not change beneficiaries or surrender the policies for their cash value in the interim. The authority to do this is expressly reserved to the owner, which is now the estate of Mrs. Videau.
Therefore, we hold that the six insurance policies, worth approximately $48,000, are to be included in the estate of Mrs. Irene Sellars Videau. Upon the assignment to her of these policies by her husband, they became her separate property and the right to the cash surrender value of these policies vested in her as of that time. At the time of her death this right to the cash surrender value vested in her estate, and must be included for the computation of the value of that estate.

UNITED STATES WAR SAVINGS BONDS
During the lifetime of Mrs. Videau, she and her husband acquired with community funds the United States War Savings Bonds described in items 10 and 10a of the descriptive list of the succession property. These bonds were purchased and registered in the names of Jules L. Videau or Mrs. Irene Sellars Videau. They are of the type generally referred as to co-owner bonds. Under Federal Treasury Regulations, the survivor will be recognized as the sole and absolute owner entitled to immediate possession without the necessity of probate proceedings or any other formality. 31 C.F.R. § 315.62. Our courts have recognized this method of transmission or disposition of property as an additional method superimposed upon our laws relative to donations inter vivos and mortis causa. Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965); Succession of Gladney, 223 La. 949, 67 So.2d 547 (1953); Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730 (1952); Succession of Mulqueeny, 172 So.2d 326 (La.App. 4th Cir. 1965); Succession of Weis, 162 So.2d 791 (La.App. 4th Cir. 1964); Succession of Mulqueeny, 156 So.2d 317 (La.App. 4th Cir. 1963).
For the reasons fully discussed by us in Succession of Guerre, La.App., 197 So.2d 738, this day decided, Mr. Videau, the surviving co-owner, is recognized as the absolute owner of the bonds. The exclusion of these bonds from the descriptive list of property belonging to the succession of Mrs. Videau is proper. Mr. Videau, in his individual capacity, is free to possess and use the bonds in any manner that he, as owner, shall see fit.
However, for the reasons stated in Succession of Guerre, the value of Mrs. Videau's community interest in the bonds shall be included in the total compilation of her estate for the purpose of determining the legitime to which the forced heir Mrs. Valda Fay Videau Farrell, Jr., is entitled. Her right to bring an action, according to law, for a reduction of excessive donations, as may be necessary, is reserved to her.
It is of no concern to us why Mrs. Videau desired to leave to her daughter Mrs. Farrell only the minimum inheritance required by our law and bequeath to the more favored daughter Mrs. Johnston the remainder of her estate. The method of transmission of property through United States Savings Bonds has been superimposed on our laws relating to donations inter vivos and mortis causa. However, we will not approve the use of such method as an instrument to accomplish a reduction *660 of the legitime, and thus impinge upon the rights of forced heirs.
We think our understanding of the principle enunciated by the Supreme Court of the United States in Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), interpreting its opinion in Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), supports our decision in this respect. As stated in Succession of Guerre, we have conceded, as being in the national interest, the wisdom of stripping savings bonds of the shackles of formality in the manner of transmission and disposition. Thus, they are relieved of the expense and delay incident to probate proceedings. We recognize the importance, as an aid to the borrowing power of the Federal Government, that its savings bonds be made attractive to investors. The simple method of transmission or disposition through the device of co-owner and survivorship provisions is in furtherance of this intent. However, we cannot conceive any benefit to the Federal Treasury or the national interest that such devices be used as a means for the disinherison of forced heirs, or to impinge upon their legitime. The declared reason based on the national interest justifies the superimposition of the device relating to transmission and disposition of property, inter vivos or mortis causa, upon our laws; but, it cannot serve as justification for the superimposition of an additional method to effect a reduction of the legitime or the disinherison of forced heirs.
We see no reason to burden this opinion with further discussion of this subject or the citation of authorities which are fully covered in Succession of Guerre, this day decided.

DEBT CLAIMED BY MR. VIDEAU AGAINST THE COMMUNITY
The surviving spouse, Mr. Videau, claims an indebtedness against the community in the amount of $51,938.28 for reimbursement of separate funds used by the community. The separate funds were acquired from the sale of his separate property during the community. Part of the separate property sold was real estate purchased before the community, and part was real estate and securities inherited by Mr. Videau from his father during the marriage. These separate funds were indiscriminately commingled with the community funds.
The trial court held that Mr. Videau was entitled to the reimbursement and gave judgment accordingly. From this part of the judgment, Mrs. Farrell has appealed. Evidence was admitted which established with convincing accuracy the amount of money Mr. Videau received from the sale of his separate property. There appears to be no question that the funds were commingled and used by the community.
Proof that the surviving husband did have a separate estate consisting of property and other assets, reduced to cash and deposited in the community bank account, is not of itself sufficient to support a judgment for reimbursement of his separate estate upon dissolution of the community. There must be proof that the funds did in fact inure to the benefit of the community. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Succession of Geagan, 212 La. 574, 33 So. 2d 118 (1947); Succession of Provost, 190 La. 30, 181 So. 802 (1938); Succession of Ferguson, 146 La. 1010, 84 So. 338 (1920); Succession of Bollinger, 30 La.Ann. 193 (1878); Belair v. Dominguez, 26 La.Ann. 605 (1874); Babin v. Nolan, 6 Rob. 508 (La.1844).
However, the proof of benefit to the community need not be with absolute exactness. Such a requirement could rarely, if ever, be met and just claims would be defeated. Recovery has been allowed upon circumstantial evidence in situations where the court was convinced that the community had received the benefit. "Each case must be disposed of under its own particular state of facts, as shown by the record." Succession of Kidd, 51 La.Ann. 1157, 26 So. 74 *661 (1899). This principle was followed and restated in Succession of Bell, 194 La. 274, 193 So. 645 (1940), where on rehearing the Court said the following:
"There is no fixed rule or standard of proof required to establish that the contribution of the separate funds of the husband has been used to benefit the community. To establish such a claim it must be shown with reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution, and that the separate funds were not wasted by the husband or disposed of for his separate benefit. Munchow v. Munchow, 136 La. 753, 67 So. 819; Succession of Ferguson, 146 La. 1010, 84 So. 338; Succession of Provost, 190 La. 30, 181 So. 802." 193 So. at 674.
In Succession of Kidd, the Court observed that Mr. Kidd was a prudent, conservative business man and that the evidence did not show that he had met with losses or reverses. Further, it noted that the community, which was worth a large amount at its dissolution, had started with nothing except the husband's capital and his good services and had large demands on it for family expenses during the marriage. From these facts it was found that the community had benefited from the advances from his separate estate. It was held to be a proper case for reimbursement.
The factual situation here is strikingly parallel to that observed by the Court in Kidd. Here the community started with nothing and when dissolved by death of Mrs. Videau was valued at approximately $250,000. Considering the fact that during the 18 years of Mr. Videau's active employment from which his annual income was not more than $12,000, and the high standard of living which the family enjoyed, it would be incredible to assume that the community did not benefit from the use of his separate funds. The certified public accountant who testified as an expert estimated that it would have required a saving of $15,000 per year to have accumulated an estate of these proportions in the time spanned by this community. As in Kidd, the evidence reveals that Mr. Videau was a prudent, conservative, and successful business man. He suffered no business reverses and was never in debt. His investments in stocks, bonds, and other securities, which produced the major portion of the community assets, could not have been possible except for the capital from his separate estate, which he commingled with community funds.
Counsel for opponent relies primarily on Munchow v. Munchow, 136 La. 753, 67 So. 819 (1915); Succession of Ferguson, supra; Succession of Provost, 190 La. 30, 181 So. 802 (1938); and Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956). The latter of these cases was subsequent to Succession of Bell, and counsel for opponent interprets it as a rejection of Bell and the adoption of the contrary view expressed in Provost. All of these cases and many others are exhaustively discussed in 27 Tul.L.Rev. 141 (1952-53), at 168-91.[1] Counsel for opponent is critical of the views therein expressed that the rationale of Bell, Kidd, and other cases is more sound than the commingling rule followed in Ferguson, Provost, and Thigpen. The author of the law review article apparently sees in the two groups of cases a conflict of authority. However, a careful reading of all these cases convinces us that that which appears to be in conflict is reconciled by the factual differences. It is principally the following language in Succession of Provost which has caused the apparent conflict:
"The trial Judge held that some of the claims which plaintiffs contend belonged to the separate estate fall properly within the community. If such be not the case, plaintiffs cannot recover these claims, because of the commingling of the separate funds so claimed with the *662 funds of the community, first, for the reason that, although plaintiffs have shown the collection of these funds by the husband, they have failed to show that they were actually used for the benefit of the community; secondly, for the reason that, had plaintiffs shown that the commingled funds were actually used for the benefit of the community, they could not recover, because of the impossibility of proof by plaintiffs, as to which part of the funds belonged to the community, and as to which part of the funds belonged to the separate estate of decedent." 181 So. at 809-810. (Emphasis in the original.)
We do not interpret the foregoing statement as meaning that the husband has precluded himself from making proof in the sense that he is perempted from doing so. Rather, we construe the above quotation to mean that by commingling the funds, he has placed before himself a serious obstacle, making proof "practically impossible." In Provost, Ferguson, and Thigpen, and in Abunza v. Olivier, 230 La. 445, 88 So.2d 815 (1956), the claimant failed to overcome the obstacle and the claims were rejected. Under the facts of those cases, we see nothing in the decisions reached to indicate a rejection of the principle followed in Kidd, Bell, and Succession of Cormier, 52 La. Ann. 876, 27 So. 293 (1900); Succession of Webre, 49 La.Ann. 1491, 22 So. 390 (1897). In Ohanna v. Ohanna, 129 So.2d 249 (La. App. 4th Cir. 1961) (certiorari denied), this court cited with approval Succession of Bell and the cases there cited. In the Ohanna case the husband's claim of debt against the community estate for reimbursement of his separate funds which had been used by the community was rejected. The rejection, however, was not because of commingling, but because of the insufficiency of proof to a reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution. In the instant case the proof is abundant that the funds from the husband's separate estate did benefit the community and that the benefits continued to the time of the community's dissolution.
Therefore, in applying the principle followed in those cases, we hold that Mr. Videau has discharged the burden imposed upon him. We find the proof convincing that he commingled no less than $51,938.28 of his separate funds with community funds and that the community estate received the full benefit therefrom throughout its existence.

RETIREMENT ANNUITY
At the time of Mrs. Videau's death her husband was receiving, and had been receiving since April 1, 1954, a monthly annunity of $165.08 from the Aetna Life Insurance Company. The monthly payments were part of a retirement annuity plan set up by Mr. Videau's former employer, Underwood-Elliott-Fisher Company. The annuity contract was entered into by Mr. Videau and Aetna Life Insurance Company on January 1, 1941. The community contributed $1,194.28 to the annuity fund while the rest of the fund was maintained by contributions by Mr. Videau's employer. The annuity contract named Mr. Videau, individually, as the primary recipient of benefits payable thereunder, and in the event of his death, his wife was to be the beneficiary.
The trial court held that the annuity was not part of the estate and cited LSA-R.S. 22:647 as authority for its position. Mrs. Farrell contends that the trial court erred on this part of its judgment, and we are of the opinion that she is correct.
LSA-R.S. 22:647 has no application to the facts concerning the annuity policy before us. Mr. Videau, as head and administrator of the community existing in 1941, was acting for the community when he contracted for the annuity at that time. It makes no difference that the policy was in his name individually. LSA-C.C. arts. 2334, 2402. Therefore, if LSA-R.S. 22:647 has any application at all, it is the community *663 itself which has the benefit of the exemptions provided by that statute.
The determining factor, in support of our conclusion that the annuity is community property, is the date on which the contract was entered into. Beginning with the Estate of Moseman, 38 La.Ann. 219 (1886), the rule has been that the character of a life insurance contract is determined at the time of the creation of the contract. LSA-R.S. 22:6(1) classifies annuities under life insurance, but this creates no problem here since the beneficiary is the annuitant himself. In Messersmith v. Messersmith, 229 La. 495, 86 So.2d 160 (1956), which presented a similar situation, the Supreme Court applied the above-stated rule of the Moseman case to an annuity contract and said:
"At the outset it must be recognized that life insurance policies made payable to the insured [annuitant], or to his executors, administrators, or assigns, are community property if taken out during the marriage. Estate of Moseman, 38 La. Ann. 219; Succession of Buddig, 108 La. 406, 32 So. 361; Succession of Verneuille, 120 La. 605, 45 So. 520; and Succession of LeBlanc, 142 La. 27, 76 So. 223, L.R.A.1917F, 1137.
* * * * * *
"Under these definitions, we are of the opinion that the individual certificate of insurance under the group annuity plan was an incorporeal, movable thing acquired by the husband during his marriage with appellant and therefore constituted an asset of the community. This certificate, irrespective of its value or its lack of value at the time of the dissolution of the community, being an incorporeal, movable thing, is property as defined by our law, from which benefits necessarily flow in favor of the wife as a community partner. Furthermore, it is stamped as property because it includes contract rights and obligations to receive money or other benefits to become due in the future, even though contingent upon the happening of an event at an uncertain time. The right to these benefits, however, is a community asset to be inventoried as such, entitling the wife to recognition of a one-half interest therein as of the date of its dissolution." 86 So. 2d at 174-175.
The event (Mr. Videau's retirement) has already happened in this case.
In the case at hand, the annuity policy was entered into on January 1, 1941, at which time the community was in existence. Therefore it became an asset of the community. In Succession of Pedrick, 207 La. 640, 21 So.2d 859, 158 A.L.R. 804 (1945), the Supreme Court stated:
"A contract of the nature involved in this suit is an investment pure and simple. The fact that it is termed an annuity contract does not in any way change the character of the contract." 21 So.2d at 860.
Since it is community property it must be included in the inventory of the community assets for the purpose of determining the deceased wife's share of the matrimonial estate.

DECREE
For the foregoing reasons, the judgment appealed from, which maintained the opposition in ordering the amendment of the sworn descriptive list of the Succession of Irene S. Videau to include the full cash surrender value of the six insurance policies on the life of Jules L. Videau and recognizing the same to be owned by Mrs. Videau as her separate property, is affirmed.
The judgment maintaining the opposition relative to the United States War Savings Bonds described in item 10 and item 10a of the descriptive list of assets is amended so as to recognize Jules L. Videau as the owner of the bonds and entitled to immediate possession thereof as owner. Also, as amended, it is affirmed ordering the value of the bonds, as of the date of Mrs. Videau's death, to be fictitiously added to the mass of the community for the purpose of *664 determining the legitime of the forced heirs.
The judgment dismissing the opposition to the claim of Jules L. Videau of a debt of $51,938.28 in favor of his separate estate against the community estate is affirmed.
The judgment dismissing the opposition to the claim of Jules L. Videau of the annuity contract with Aetna Life Insurance Company, as his separate property, is reversed. Judgment is now rendered recognizing the annuity contract as property belonging to the community of acquets and gains between Jules L. Videau and his wife, Irene Sellars Videau. The descriptive list of assets is to be amended to include the community interest therein of Mrs. Irene Sellars Videau as a part of her estate.
The case is remanded to the district court for further proceedings in accordance herewith and according to law.
All costs of this appeal shall be charged as costs of the succession.
Affirmed in part; amended and affirmed in part; reversed in part; and remanded.
NOTES
[1] Separate Claims to Reinbursement from Community Property in Louisiana, by W. O. Huie, Professor of Law, The University of Texas.