622 So.2d 253 (1993)
In the Matter of the SUCCESSION OF Henry Elbert HARRELL, Jr.
No. 92 CA 1750.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
Rehearing Denied August 4, 1993.
*254 Ashton L. Stewart, Baton Rouge, for plaintiff-appellee City Nat. Bank, Executor of Succession.
David M. Ellison, Jr., Baton Rouge, for defendant-appellant Gerald C. Williams, Jr. and Lydia L. Harrell.
Sue Ann Bracewell, Humble, TX, for defendant-appellee Sue Ann Bracewell.
Before LOTTINGER, C.J., PITCHER, J., and CHIASSON[*], J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
This is a suspensive appeal from a judgment ordering homologation of a detailed descriptive list. City National Bank of Baton Rouge (City National), executor, listed a claim of the estate of the deceased against his surviving spouse, Lydia Kidd Harrell, who is an interdict. Gerald C. Williams, Jr., undercurator for Mrs. Harrell, opposed the homologation. The trial court determined that the opposition was without merit and dismissed the case at opponent's costs.

FACTS
Henry Elbert Harrell, Jr. and Lydia Kidd Harrell were married for many years and accumulated substantial property during the existence of the community. They had no children. Both were residents in the same nursing home for many years. Mr. Harrell died on May 15, 1991, and Mrs. Harrell, well advanced in years, is mentally incompetent and has been interdicted.
City National Bank is both executor of Mr. Harrell's succession and curator for Mrs. Harrell. Gerald C. Williams, Jr. is the nephew of Mrs. Harrell and her duly appointed undercurator.
Mr. Harrell bequeathed all of his property to a trust with Mrs. Harrell as income beneficiary with the right to invade the principal. Two brothers and a sister of Mr. Harrell were named principal beneficiaries of the trust which was to terminate upon the death of Mrs. Harrell.
During the marriage and presumably with community funds, Mr. and Mrs. Harrell purchased $154,274.09 worth of U.S. Series HH Savings Bonds. In filing its detailed descriptive list for Mr. Harrell's succession, City National recognized that the bonds were owned by Mrs. Harrell as the surviving co-owner, but it asserted a claim of $77,137.04 against her. This figure represented one-half of the value of the bonds at the time of Mr. Harrell's death.
A rule to homologate the detailed descriptive list was filed and opposed by the undercurator for Mrs. Harrell on two grounds. The undercurator contended that under applicable law, Mrs. Harrell was entitled to full ownership of the savings bonds without any obligation to reimburse her husband's succession. Additionally, the undercurator argued that City National failed to list a debt of the succession to Mrs. Harrell for $23,250. This debt was for one-half of the donations made by Mr. Harrell from community funds to Mrs. Mildred Whitehead and her family. Mrs. Whitehead was head nurse at the nursing home where the Harrells resided.
The trial court ordered that the detailed descriptive list presented by City National be homologated with costs assessed against the undercurator. From this ruling, this appeal followed.

CLAIM FOR ONE-HALF THE VALUE OF THE U.S. SAVINGS BONDS

(Assignment of error number one)
The undercurator contends that the trial court erred by ruling that Mr. Harrell's estate had a claim against Mrs. Harrell for one-half of the value of the savings bonds. He argues survivorship provisions as co-owners of U.S. Savings Bonds preempt state community property law and no reimbursement to the estate is required.
*255 City National claims that because the bonds were bought with community funds, the succession of Mr. Harrell has a claim against the surviving spouse for an undivided one-half of the bonds' value. City National maintains that failure to recognize this claim would result in circumvention of state law amounting to constructive fraud and depriving the trust of valuable property rights.
City National bases its claim primarily on Slater v. Culpepper, 222 La. 962, 64 So.2d 234 (1953). In Slater our Supreme Court ruled that when community funds were used to purchase savings bonds in co-ownership between spouses, the estate of the deceased had a claim for one-half of the value of the bonds against the surviving spouse. The Louisiana Supreme Court reasoned that federal law should not be used as a shield to avoid Louisiana community property law. Slater v. Culpepper, 64 So.2d at 237-238.
However, in 1962 the Supreme Court of the United States effectively overruled decisions such as Slater. In Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), the United States Supreme Court held that survivorship provisions under federal regulations must prevail under the Supremacy Clause of the United States Constitution if it conflicts with state law. In Free v. Bland spouses under community property laws of Texas purchased with community funds savings bonds as co-owners. Thereafter, one of the spouses died and the other was recognized by Texas courts as sole owner with a duty to reimburse the estate of the deceased for one-half of the value of the bonds. The United States Supreme Court reversed, holding that "state law which prohibits a married couple from taking advantage of the survivorship provisions of United States Savings Bonds merely because the purchase price is paid out of community property must fall under the Supremacy Clause." Free v. Bland, 369 U.S. at 670, 82 S.Ct. at 1094.
Two years later in Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), the United States Supreme Court again declined to impose community claims upon the beneficiary or the estate of the deceased spouse unless fraud or breach of trust tantamount to fraud existed. In Yiatchos the decedent husband purchased saving bonds with community funds and named his brother as beneficiary. The surviving spouse asserted a claim under Washington State law that the bonds were used as a device to deprive her of property rights which, but for the survivorship provisions of federal bonds, would have been hers. The Court remanded the case to give the wife an opportunity to establish fraud or breach of trust as defined by federal law.
Although City National argues that Louisiana jurisprudence does not allow circumvention of mandated laws, the cases cited by City National are clear that federal law governs ownership of saving bonds when no fraud exists and forced heirs are not involved. In Succession of Weis, 162 So.2d 791 (La.App. 4th Cir.1964), the Fourth Circuit determined that because no forced heirs existed, the co-owner of savings bonds was entitled to the savings bonds and to an additional legacy named in the decedent's will.
In Succession of Videau, 197 So.2d 655 (La.App. 4th Cir.); writ refused, 250 La. 920, 199 So.2d 922 (1967), one of the co-owner spouses died and a daughter sought to have the value of savings bonds included in the descriptive list of her mother's estate. The Court determined that the surviving spouse was absolute owner of the bonds, but that the value of the bonds should be included in the decedent's estate when the legitime of a forced heir was impinged. Succession of Videau, 197 So.2d at 659-660.
Another decision cited by City National is Succession of Guerre, 197 So.2d 738 (La. App. 4th Cir.), writs refused, 250 La. 928, 929, 933, 199 So.2d 925, 926 (1967). Guerre also involved forced heirship and the reduction of a legitime. For that reason alone, the Court ordered that co-owner savings bonds be included in the descriptive list as an excessive donation reducing the legitime of forced heirs. Thus, both Videau *256 and Guerre can be distinguished from the present case because the Harrells had no forced heirs.
Finally, in 1981 the Supreme Court of Louisiana determined that purchasing saving bonds in co-ownership with another was not tantamount to fraud. In Osterland v. Gates, 400 So.2d 653 (La.1981), two daughters were named co-owners with their mother of savings bonds. One daughter was co-owner for bonds worth $56,000 and the other daughter was co-owner for $25,000 in bonds. The issue was whether the bonds should be collated in order to equalize the inheritance of each daughter. The Court determined that the purchase of U.S. Savings Bonds did not deprive either daughter of any property rights under Louisiana law. Therefore, the decedent did not commit fraud or breach of trust and collation was not required. Osterland v. Gates, 400 So.2d at 656-657.
In the instant case the savings bonds are of such a type that vest full and complete ownership in the surviving co-owner spouse. There is no indication of fraud or deprivation of property rights to Mr. Harrell's estate or any forced heirs. The Harrells clearly wanted the bonds to go to the surviving spouse with no legal entanglements.
For the reasons herein stated, the trial court erred when it determined that Mr. Harrell's succession should include a claim against Mrs. Harrell for $77,134.04, one-half the value of the bonds, in the descriptive list ordered homologated. Accordingly, this assignment of error has merit.
EXTRAORDINARY DONATIONS FROM THE COMMUNITY WITHOUT THE CONSENT OF THE OTHER SPOUSE

(Assignment of error number 2)
The undercurator for Mrs. Harrell contends that Mr. Harrell gave away, without legal authority and in prohibition of La.C.C. art. 2349, the sum of $23,250 that belonged to Mrs. Harrell. Additionally, he argues that Mrs. Harrell should not be subjected to the expense of a lawsuit when she had no part in making the prohibited donations.
City National maintains that as curator for Mrs. Harrell, it has followed the law explicitly by filing suit against Mrs. Whitehead to void the whole of the donations. Furthermore, City National claims no legal basis exists to decree that the succession is indebted to Mrs. Harrell for one-half of the donations to Mrs. Whitehead.
Neither party disputes that during the time Mr. and Mrs. Harrell lived in the nursing home, Mr. Harrell gave Mrs. Mildred Whitehead, head nurse at the nursing home, gifts by check of $46,500. These donations occurred after the court determined that Mrs. Harrell lacked capacity, had been interdicted and was under the curatorship of City National. City National instituted suit as curator against Mrs. Whitehead to void all of the donations, but it did not seek recovery for Mr. Harrell's share. City National did not list a claim against the recipients of these gifts in its detailed descriptive list nor did it file suit as executor of Mr. Harrell's estate against the donees.
La.C.C. art. 872 defines the meaning of an estate. The definition includes the right of the estate to sue and to seek damages for wrongful acts. City National, as executor, should list the succession's claim against Mrs. Whitehead in the detailed descriptive list.

DECREE
For the foregoing reasons, the judgment of the trial court ordering homologation of the descriptive list of the Succession of Henry Elbert Harrell, Jr. is reversed and the case is remanded to the trial court for further proceedings consistent with this decree. The Succession of Henry Elbert Harrell, Jr. is cast for all costs.
REVERSED AND REMANDED.
NOTES
[*] Judge Remy Chiasson, Retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.